**ALBIA PUBLISHING COMPANY, Appellant,**

v.

**George KLOBNAK, Raymond Vance, and Billy K. Myers, as Board of Supervisors of Monroe County, Iowa, Appellees.**

No. 88–130.

Supreme Court of Iowa.

Jan. 25, 1989.

Kasey W. Kincaid of Nyemaster, Goode, McLaughlin, Emery & O'Brien, Des Moines, and W.K. Cash, Albia, for appellant.

Annette J. Scieszinski, Monroe County Atty., for appellees.

Michael A. Giudicessi, Des Moines, for amicus curiae Iowa Newspaper Ass'n.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, NEUMAN and ANDREASEN, JJ.

NEUMAN, Justice.

When the Monroe County Board of Supervisors met in January 1986 to select the newspapers in which official proceedings would be published for the ensuing year, two applicants came forward: the *Albia Union–Republican* and the *Monroe County News*. The board knew that the statute guiding its selection, Iowa Code § 349.3 (1985), required counties having a population of less than 15,000 to select two official newspapers unless "there be but one published therein." Seizing on this qualification as an opportunity "to safeguard the taxpayers' dollars," the board decided the two applicants were really one and the same entity. Thus it rejected the *Monroe County News'* application and granted official status to the *Union–Republican.*

The publisher of the *Monroe County News*, appellant Albia Publishing Company, responded by filing a petition for mandamus in district court to compel the board's designation of a second newspaper as required by section 349.3. Following trial, the district court dismissed the petition, concluding "there was a basis in fact" for the board's decision. On appeal from that ruling, the Albia Publishing Company contends that the district court's deference to the board resulted in a violation of section 349.3. We agree and reverse the district court.

I. At the outset we note that the case is properly before us on mandamus. Iowa Code section 349.1 imposes a duty upon county boards of supervisors to annually select newspapers for publication of official proceedings. The appropriate number to be selected is prescribed by section 349.3(1):

> In counties having a population of less than fifteen thousand, two such newspapers, or one, if there be but one published therein.

The board concedes that Monroe County's population is less than 15,000, and that both the *Albia Union–Republican* and the *Monroe County News* meet the general criteria established for "official" newspa-

pers by Iowa Code section 618.3. In an earlier case we summarized those general requirements this way:

> [A] paper in which such notices may be carried must be, (1) of general circulation; (2) published regularly and mailed through the post office of current entry for more than two years; and (3) for the same period had a bona fide circulation recognized by the postal laws.

*Widmer v. Reitzler*, 182 N.W.2d 177, 180 (Iowa 1970).

The board claims that the publishing company should have appealed the board's refusal to designate two papers, rather than seek mandamus. The trial court correctly ruled, however, that the appeal provisions of Iowa Code section 349.11 apply only where a "contest" exists. A contest is defined in this context as occurring when "more applications are filed than there are newspapers to be selected." *See* Iowa Code § 349.4. No such contest exists here.

Given two qualified newspapers published within the county, the board would be without discretion to select a lesser number than that prescribed by section 349.3(1). *Bredt v. Franklin County*, 227 Iowa 1230, 1234, 290 N.W. 669, 671 (1940). The Albia Publishing Company was entitled to maintain mandamus to attempt to prove that the board was required to act under the statute. *See id.*

II. Because an action for mandamus is triable in equity, we make a de novo review of the record on appeal. Iowa Code § 661.3; Iowa R.App.P. 4; *Osborn v. City of Cedar Rapids*, 324 N.W.2d 471, 474 (Iowa 1982). We give weight to the trial court's findings, but we are not bound by them. *Nowlin v. Scurr*, 331 N.W.2d 394, 396 (Iowa 1983).

The question before us boils down to a factual determination of whether the *Albia Union–Republican* and the *Monroe County News* are two separately published newspapers or, as the board persuaded the trial court, merely two editions of the same newspaper. Before proceeding to an examination of the record made before the district court, however, a brief review of the law guiding our assessment of those facts is in order.

Prior decisions of this court relating to the selection of official newspapers have focused almost exclusively on contests over subscription lists. *See generally Times–Guthrian Publishing Co. v. Guthrie County Vedette*, 256 Iowa 302, 125 N.W.2d 829 (1964); *Bloomfield Davis County Messenger v. Bloomfield Democrat*, 201 Iowa 196, 205 N.W. 345 (1925); *Ashton v. Story*, 96 Iowa 197, 64 N.W. 804 (1895). Although not dispositive of the question before us, we may glean from even the earliest of these cases the principle that "[t]he reason for selecting the papers having the largest number of subscribers is to secure as large a general circulation of the official publications of the county among its citizens as is practicable in two newspapers." *Ashton*, 96 Iowa at 201, 64 N.W. at 805; *accord Times–Guthrian Publishing Co.*, 256 Iowa at 307, 125 N.W.2d at 832. Moreover, this emphasis on wide dissemination of official proceedings has not precluded newspapers with similar or even identical subscription lists from separately qualifying for official status. *See Bloomfield Davis County Messenger*, 201 Iowa at 199–200, 205 N.W. at 346.

The question of what test might apply to a dispute like the one before us, however, has most frequently been addressed to the Iowa Attorney General. In a 1974 opinion, the attorney general addressed the question whether two newspapers which share offices, employees, owners, and subscribers nonetheless can both be selected as official newspapers. The opinion concluded that ownership and publication by a single corporate entity did not preclude the designation of both papers under section 349.3(1):

> [I]f, in fact, the two papers present distinctly different editorial policies or carry different kinds of syndicated articles or features so as to attract separate reading interests and to maintain two distinctive identities, then there would be two newspapers, regardless of the fact that they both are published by a single corporate entity. On the other hand, an absence of

such facts would probably indicate publication of two editions of the same newspaper.

If the two newspapers are organized as separate corporations, it is immaterial whether the ownership of such corporations is identical and whether or not they are housed in the same offices and have the same subscribers. In such case, both newspapers could be the official newspapers.

1974 Op. Att'y Gen. 513–14.

While an attorney general's opinion is not binding on this court, it is entitled to our respectful consideration. *Unification Church v. Clay Central School Dist.*, 253 N.W.2d 579, 581 (Iowa 1977). We note that the views held in the foregoing opinion have been consistently expressed since 1939 and reiterated as recently as 1984. *See generally* 1939 Op. Att'y Gen. 3; 1984 Op. Att'y Gen. No. 84–4–5[L]. We find the reasoning persuasive and consistent with the evident legislative intent. By shifting the focus away from factors such as shared publication facilities to factors which better identify separate readership, the legislative goal of widely publicizing the county's official business is better served. *See* 1939 Op. Att'y Gen. at 4.

Thus we hold that where a trial court is faced with determining whether two publications are separate newspapers or, rather, different editions of the same newspaper, the determinative factor shall not be whether the newspapers share common ownership, production equipment or subscriber lists. Rather the court shall decide whether the papers have maintained distinctive identities as reflected by different editorial policies, articles and features.[1]

■ III. We turn then to the record made concerning the identities of the *Albia Union–Republican* and the *Monroe County News*. The *Monroe County News*, of course, is owned and published by appellant Albia Publishing Company. A differ-

ent corporation, the Union–Republican Company, has owned and published the *Albia Union–Republican* since 1928. Although there is some cross-ownership within the two companies, the shareholders of the two corporations are not identical and there is no dispute that they are separate legal entities. Each files separate income tax returns and each has a separate second class mail permit issued to it from the post office in Albia.

Each paper is published once each week, the *News* on Tuesday and the *Union–Republican* on Thursday. The *Union–Republican* offers editorials on issues of public concern; the *News* carries no editorials at all. Both carry separate letters to the editor. The papers also differ in the features each carries. The *Union–Republican*, for example, has designated farm and church sections while the *News* does not. Each paper carries notices of births, deaths and hospital reports but there is little duplication due to different publication dates. Separate subscriptions are available for the papers, though there is a joint subscription package and nearly all the county newspaper subscribers take both papers.

On the common side, the corporations jointly own the printing equipment used for the papers. They likewise share the same offices and personnel. Both newspapers are commonly referred to as "The Albia Newspapers" and have received joint recognition under such name.

As previously noted, there is no dispute that each newspaper meets the minimum requirements established for an "official" newspaper under Iowa Code section 618.3. It appears that the outward image of a unified publication, however, led the board to ignore the distinct corporate identity of each publication, their diverse editorial policies and separate subscription lists. Moreover, the record makes clear that impermissible economic considerations prompted the

---

1. We recognize that the Iowa legislature has recently amended chapter 349 to provide that in case of a contest under section 349.6, "newspapers under common ownership published in the same city, and having approximately the same subscriber list ... shall be treated as one newspaper." 86 Iowa Acts ch. 1013, § 1. Thus our rule would apply only where no contest exists, as in the case before us.

board's refusal to designate two official newspapers for Monroe County.

The board's priority is highlighted by this excerpt from its minutes:

The Board discussed with the County Attorney the law regarding designation of an official paper. The Board discussed the additional cost of two publications if the papers were indeed one with the same subscribers; would be a saving to designate only one as the official newspaper.

In testimony before the district court, this sentiment was echoed by one board member who candidly admitted that while shared personnel and publication facilities were factors in the decision,

one of the other reasons was the money involved in the publication of this. The Board of Supervisors is elected to safeguard the taxpayers' dollars, and we felt that this was one of the places.

That same board member, who acknowledged that his views paralleled those of the only other voting member, went on to observe:

I felt personally that once a week was enough to be publicizing any of the legals or any of the board proceedings, and the fact that we felt it was one paper, we felt that was sufficient.

■ We conclude from our de novo review of the entire record that the board's duty to designate two official newspapers under Iowa Code section 349.3(1) was overshadowed by its desire to save money for the county. This fiscal conservatism, though perhaps laudable, is not a permissible factor under the statute and, in fact, conflicts with the primary legislative purpose behind section 349.3: to insure that official notices reach the largest number of county residents. The legislature has determined that in counties having a population of 15,000 or less, that goal is best achieved by publication in two newspapers.

Notwithstanding their similarities, the distinct corporate and editorial identities of the *Albia Union–Republican* and the *Monroe County News* qualified them for official status and the board was remiss in its duty not to so designate them. Accordingly, we reverse the decision of the district court and remand for entry of a writ of mandamus compelling the Monroe County Board of Supervisors to designate the two applicant newspapers in accordance with Iowa Code section 349.3(1).

REVERSED AND REMANDED WITH INSTRUCTIONS.