Cletus J. GOLINVAUX, Roger V. O'Brien, Dave J. Weis, Cyril W. Oswald and David R. DeBolt, Appellees,

v.

CITY OF DUBUQUE, Iowa, and Board of Police Trustees of the Police Retirement System, City of Dubuque, Appellants.

No. 88–899.

Supreme Court of Iowa.

April 19, 1989.

Barry A. Lindahl, Corp. Counsel, Dubuque, for appellants.

Donald R. Breitbach of Reynolds & Kenline, Dubuque, for appellees.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN and SNELL, JJ.

NEUMAN, Justice.

This is an appeal from a declaratory judgment concerning calculation of pension benefits for retired police officers. The question is whether certain "educational bonus pay" should be properly considered "earnable compensation" under Iowa Code section 411.1(11) (1987). The district court held that under the circumstances of this case, it should. In so holding, the court recognized "the distinction between educational pay that is merely compensation for the cost of obtaining the education and educational pay that creates a new status or rank consisting of those officers who have had the required training." We affirm.

The case reached the trial court on the following stipulated facts. The plaintiffs are all former members of the City of Dubuque police force who retired in 1983 or 1985. While employed by the City, each officer received education (college) pay as part of his compensation. This education pay equaled a fixed percentage of base pay ranging from four and one-half to five percent. To qualify for this salary increase, each officer was required to complete sixty credit hours of approved college courses.

Upon retirement, each officer began receiving a pension in accordance with Iowa Code section 411.6. In calculating the amount of these pensions, however, the

City has refused to include the educational pay earned by each officer as part of its computation of "earnable compensation." It is this refusal that has spawned the current controversy.

Iowa Code chapter 411 governs the administration and payment of retirement benefits for police officers and firefighters. In the case of retired police officers, the board of police trustees is authorized to calculate retirement benefits on the basis of "average final compensation." *See* Iowa Code § 411.6(1)(b). The term "average final compensation," as used in the statute, "means the average *earnable compensation*" paid during the officer's three years of highest salary. *See* Iowa Code § 411.1(13) (emphasis added). Section 411.-1(11), in turn, defines "earnable compensation" as,

> the regular compensation which a member would earn during one year on the basis of the stated compensation for the member's rank or position including compensation for longevity and holidays and excluding any amount received for overtime compensation or other special additional compensation, meal and travel expenses, and uniform allowances ... accumulated sick leave or vacation.

Until 1977, the City treated education pay as earnable compensation in the calculation of pension benefits. That year, however, the attorney general issued an opinion that educational pay—"if that term means payments made as reimbursement for education while employed"—is not to be included as earnable compensation. 1977 Op. Att'y Gen. 55, 58. Notwithstanding the fact that the City's educational bonus system is not a tuition reimbursement scheme but, rather, a plan that enhances the base pay of every officer who has completed sixty credit hours of college, the City has persisted in its policy of exclusion.

In support of its policy, the City contends that the plain language of section 411.1(11) restricts earnable compensation to the "stated compensation for the member's rank or position." Because the City's educational bonus plan is set out separately from the wage plan in the parties' collective bargaining agreement, the City argues that such bonuses are not "stated" compensation but "special additional" compensation. In other words, the City seems to argue that educational pay is more akin to variable compensation paid for overtime and uniform allowances than to pay based, for example, on longevity, a non-excludable pension component.

■■■ Preliminarily we note our obligation to consider the City's argument in the light of the rule that "laws creating pension rights are to be liberally construed to promote their legislative purpose and objective." *Uffelman v. Fire Pension Bd.*, 424 N.W.2d 467–68 (Iowa 1988). As the district court sought to discern that legislative intent, it relied heavily on a 1982 opinion of the attorney general pertinent to the question before us. *See* 1982 Op. Att'y Gen. 387 (summary; full text available as Police and Fire Pensions 1982 Op. Att'y Gen. No. 82–3–26(L) (March 31, 1982) from A.G.'s office). While we are not bound, of course, by such an opinion, it is entitled to our respectful consideration. *Albia Publishing Co. v. Klobnak*, 434 N.W.2d 636, 639 (Iowa 1989).

The opinion in question squarely addressed an inquiry concerning the inclusion of educational pay in the computation of earnable compensation. Not unlike the case before us, the pay in issue was "not a reimbursement for college tuition but a permanent monthly payment for each credit hour earned." *See* 1982 Op. Att'y Gen. No. 82–3–26(L). Referring to the attorney general's earlier opinion on the same subject, the author reiterated the view that "education pay appear[s] to be [an] item other than [a] normal wage." *Id.* (quoting 1977 Op. Att'y Gen. at 58). It then went on, however, to clarify the premise upon which the 1977 opinion was based: that there is a difference between educational pay that constitutes a "normal wage," that is, an automatic monthly payment included in the base wage, and a payment made as *reimbursement* for education. The former qualifies as earnable compensation while the latter does not. *Id.*

We think the distinction drawn by the attorney general is a reasonable one that is consistent with the evident legislative intent underlying section 411.1(11). Since its enactment in 1935, the legislative history of the statute has revealed two distinct trends: an expansion of the list of employment benefits to be excluded; and a marked similarity between the statutorily included benefits and the educational pay at issue here. *Compare* Iowa Code § 6326–f1(14) (1935) (restricting definition of earnable compensation to "stated compensation ... for ... rank or position") *with* § 411.1(14) (1977) (amending statute to exclude any amount received for overtime, meal and travel expenses, uniform allowances and accumulated sick leave) *with* § 411.1(12) (1979) (adding compensation for longevity as an includable benefit; excluding accumulated vacation pay as well as sick leave; and expanding the exclusion for overtime compensation by adding the words "or other special additional compensation") *with* § 411.1(11) (1985) (adding holiday pay to list of includable benefits) *with* § 411.1(11) (1987) (same).

■ Applying the principle that a legislature may rule by omission as well as inclusion, we infer from the statute's lengthy list of exclusions a legislative intent to exclude only those benefits specifically named. *See Iowa Bankers Ass'n v. Iowa Credit Union Dep't*, 335 N.W.2d 439, 446 (Iowa 1983); 1977 Op. Att'y Gen. at 58; N. Singer, 2A Sutherland *Statutes and Statutory Construction* § 47.23, at 194 (1984 rev. ed.). Moreover, the notable *inclusions*—holiday and longevity pay—represent a standardized adjustment to the wage base characteristic of the educational bonus at issue here. Unlike the varying payments associated with overtime, uniform allowance, travel expense and accumulated sick leave, compensation for educational achievement entitles officers to a fixed percentage increase in wages over the remaining years of their employment.

■ As we noted in *Asmann v. Board of Trustees*, 345 N.W.2d 136, 138 (Iowa 1984), the pension adjustment provisions of chapter 411 are designed to protect retirees' "unrepresented interests" in the police department salary structure. Although *Asmann* involved different facts—creation of a new pay step entitled "Master Police Officer"—the principle implicated in both cases is the same. The educational bonus we deal with here, like the longevity-based "Master Police Officer" designation in *Asmann*, is contingent on a pre-set standard: sixty hours of education. It is uncontested that the plaintiffs before us would receive the education bonus were they not retired. *Cf. Asmann*, 345 N.W.2d at 138. Consistent with our holding in *Asmann*, we cannot allow the City to exclude the plaintiffs' educational pay from earnable compensation and thereby effectively create a pay step for which current officers are rewarded and retirees are not. *See id.*

In summary, we are persuaded that rules of statutory construction, opinions of the attorney general, and prior case law support the conclusion reached by the district court. We thus hold that educational pay which amounts to a fixed percentage increase in the wage base, as opposed to a scheme of tuition reimbursement, should be included by the pension board as "earnable compensation" in its computation of retirement benefits under Iowa Code chapter 411.

AFFIRMED.