Steven G. BRANSON, Appellant,

v.

MUNICIPAL FIRE & POLICE RETIREMENT SYSTEM OF IOWA, Appellee.

No. 97–1273.

Supreme Court of Iowa.

March 24, 1999.

Dennis M. McElwain and Michael L. Smith of Smith & McElwain Law Office, Sioux City, for appellant.

Alice E. Helle and Douglas E. Gross of Brown, Winick, Graves, Gross, Baskerville and Schoenebaum, P.L.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, NEUMAN and CADY, JJ.

McGIVERIN, Chief Justice.

The question here is whether a former firefighter, Steven G. Branson, may receive accidental disability retirement benefits under Iowa Code chapter 411 (1995) for an ongoing, cumulative knee injury which developed during the course of his career as a firefighter, but which cannot be attributed to "the actual performance of duty at some definite time and place." Iowa Code § 411.6(5)(a).

The Municipal Fire and Police Retirement System of Iowa (the System) concluded that Branson was not entitled to accidental disability benefits because the language of Iowa Code section 411.6(5)(a) requires that the disabling injury be attributable to a specific event which caused the injury. The System therefore only awarded Branson ordinary disability retirement benefits because his knee injury was the result of ordinary wear and tear and not attributable to a specific event or "actual performance of duty at some definite time and place." Iowa Code § 411.6(5)(a).

On Branson's certiorari review of the System's decision in the district court, the court agreed with the System's determination that Branson was not entitled to accidental disability retirement benefits because his knee injury could not be traced to a specific injury that occurred at a specific time and place.

Upon Branson's appeal, we uphold the decisions reached by the System and the district court. We therefore affirm the judgment of the district court.

## I. Background facts and proceedings.

Steven G. Branson began working as a firefighter for the city of Council Bluffs in 1980. He last worked as a firefighter in September 1995, when he was unable to continue working due to swelling and pain in his left knee.

Branson sought medical treatment for his left knee in 1994. On June 9, 1994, Branson

sought medical treatment from Dr. Daniel J. Larose, an orthopedic specialist, complaining of pain in his left knee. Dr. Larose's notes from this visit state that Branson complained that his left knee had been bothering him for several years, that the pain was getting progressively worse over time, and that he was unable to run. Dr. Larose further noted that Branson "denies any previous injury to the knee." Dr. Larose's diagnosis following the examination was osteoarthritis of the left knee.

Dr. Larose next examined Branson on September 8, 1994. Dr. Larose's notes indicate that Branson again complained of pain in his left knee, with significant discomfort after running and some discomfort from sitting. The notes also state that the pain "is certainly activity related." Dr. Larose discussed the option of performing osteotomy surgery with Branson, explaining that Branson would be off work for a few months following surgery.

On December 13, 1994, Branson slipped on ice while responding to a medical emergency and strained his left knee. The workers' compensation claim form indicates that Branson returned to work on December 18, 1994.

Branson next saw Dr. Larose on January 12, 1995 and agreed to go ahead with surgery. Surgery was performed on Branson's left knee on March 7, 1995. The procedure was described as a high tibial osteotomy of the left knee.

Branson returned to work on September 1, 1995, but was only able to work three days due to pain and swelling in his left knee. Branson did not return to work and was forced to take an early retirement.

On September 7, 1995, Branson filed an application with the System for disability retirement benefits.

A medical board from the University of Iowa Hospitals and Clinics, see Iowa Code section 411.5(8), after examination of Branson, certified in writing that Branson "is physically incapacitated from the performance of the functional demands of his position.... This incapacity is likely to be permanent."

On November 30, 1995, the System, by a letter from its executive director, awarded Branson "ordinary disability" retirement benefits because of his left knee disability. Thereafter, Branson filed an appeal with the System challenging the classification of his disability as "ordinary" rather than "accidental."

A hearing concerning Branson's appeal was held before a three-member disability appeals committee of the System. The committee received evidence from Branson and Dr. Larose concerning Branson's duties as a firefighter and his complaints concerning his left knee. Dr. Larose explained that Branson's condition was a "wear and tear" type of arthritis, and that, while Dr. Larose did not believe that the job caused the osteoarthritis, he felt it was an aggravating factor and that it "did accelerate the wear in his knee." Dr. Larose did not link Branson's condition to a specific work injury event.

In its decision following the hearing, the committee noted that it was undisputed that Branson was incapacitated from performing duties as a firefighter due to osteoarthritis in the left knee. The committee further concluded, however, that Branson "failed to prove that his disability was caused by the actual performance of duty at a definite time and place" as required by Iowa Code section 411.6(5)(a). The committee thus denied Branson's appeal for accidental disability retirement benefits, but ordered that he continue to receive ordinary disability retirement benefits as awarded by the System on November 30, 1995.

The System's Board of Trustees later ratified the committee's decision as the final decision of the System.

Thereafter, plaintiff Branson filed a petition for writ of certiorari in district court, seeking review of the defendant System's decision. After hearing, the district court denied Branson's petition. The court concluded that substantial evidence supported the System's conclusion that Branson was not entitled to an accidental disability retirement pension because he did not prove that his disability resulted from an injury which occurred in the actual performance of duty at "some definite time and place." See Iowa

Code § 411.6(5)(a). The court rejected Branson's contention that a cumulative injury, such as his ongoing knee problem, could qualify as an "accidental" injury for purposes of obtaining accidental disability retirement benefits.

Branson appeals.

## II. Scope of review.

We summarized the applicable scope of review principles for cases like this in *City of Cedar Rapids v. Municipal Fire & Police Retirement System*, 526 N.W.2d 284 (Iowa 1995):

Iowa Code chapter 411—Retirement Systems for Police Officers and Firefighters—does not contain any appeal provisions. But a party receiving an adverse decision from the Board may seek judicial review of the Board's decision by filing a petition for a writ of certiorari. . . .

Certiorari actions are proper when an inferior board, exercising judicial functions, acts illegally. . . . An inferior board acts illegally if it has not acted in accordance with a statute or if its decision was not supported by substantial evidence. . . . Evidence is substantial "when a reasonable mind could accept it as adequate to reach the same findings." . . . Evidence is still substantial even though it would have supported contrary inferences. . . .

*Id.* at 286–87 (citations omitted).

## III. Applicable statutory provisions.

Branson contends that the System incorrectly applied Iowa Code section 411.6(5)(a) concerning the requisite showing for accidental disability retirement benefits.

Iowa Code chapter 411 establishes three types of retirement benefits for firefighters and police officers: (1) service retirement benefits as the result of age and/or service under section 411.6(1); (2) ordinary disability retirement benefits under section 411.6(3); and (3) accidental disability retirement benefits under section 411.6(5).

Branson would prefer an award of "accidental" disability retirement benefits over an award of "ordinary" disability retirement benefits because the amount paid under an award of "accidental" disability benefits is greater than the amount paid under an award of "ordinary" disability benefits. *Compare* Iowa Code § 411.6(6)(b) (calculating accidental disability retirement benefits at approximately sixty percent of the member's average salary), *with id.* § 411.6(4) (calculating ordinary disability retirement benefits at approximately fifty percent of member's average salary); *accord City of Cedar Rapids v. Board of Trustees of the Mun. Fire & Police Retirement Sys.*, 572 N.W.2d 919, 922 (Iowa 1998). There may also be certain tax advantages. *See City of Cedar Rapids*, 572 N.W.2d at 922; *Moon v. Board of Trustees of the Mun. Fire & Police Retirement Sys.*, 548 N.W.2d 565, 568 (Iowa 1996).

Iowa Code section 411.6(3) states when a member is entitled to ordinary disability retirement benefits and provides in pertinent part:

*Ordinary disability retirement benefit.* Upon application to the system, of a member in service or of the chief of the police or fire departments, respectively, any member shall be retired by the system, not less than thirty and not more than ninety days next following the date of filing the application, on an *ordinary disability* retirement allowance, *if* the medical board after a medical examination of *the member* certifies that the member is mentally or *physically incapacitated for further performance of duty, that the incapacity is likely to be permanent,* and that the member should be retired.

(Emphasis added.)

Iowa Code section 411.6(5)(a) pertaining to accidental disability retirement benefits states in part:

*Accidental disability benefit.*

*a.* Upon application to the system, of a member in service or of the chief of the police or fire departments, respectively, any member who has become totally and permanently incapacitated for duty *as the natural and proximate result of an injury or disease incurred in or aggravated by the actual performance of duty at some definite time and place,* or while acting

pursuant to order, outside of the city by which the member is regularly employed, shall be retired by the system, if the medical board certifies that the member is mentally or physically incapacitated for further performance of duty, that the incapacity is likely to be permanent, and that the member should be retired.[1]

(Emphasis added.)

■ For purposes of this case, section 411.6(5)(a) can essentially be broken down into the following three elements:

1) a total and permanent incapacitation for duty caused by an injury;

2) the disabling injury occurred in the actual performance of duty; and

3) the injury occurred at some definite time and place.

*See also City of Cedar Rapids,* 572 N.W.2d at 922 (noting that three basic issues are usually present in a claim for accidental disability retirement benefits under section 411.6(5):(1) permanent incapacity; (2) causation; and (3) injury or disease); Robert M. Schoenhaus, Annotation, *Determination Whether Firefighter's Disability is Service–Connected for Disability Pension Purposes,* 7 A.L.R.4th 799, 804 (1981) (noting that some jurisdictions have bifurcated pension systems which provide one level of pension benefits to firefighters who sustain any disabling injury, while providing a higher level of benefits to firefighters who become disabled as a direct result of an accidental injury sustained in the performance of duty caused by a sudden and unexpected event).

The parties do not dispute that Branson satisfies the first element, that is, that Branson is permanently incapacitated for further duties as a firefighter. Nor do the parties dispute that Branson's incapacitation is a result of his duties as a firefighter, or that he is entitled to some type of disability retirement benefits under chapter 411.

Branson, however, does not contend that his disability is the result of a specific work-related incident that occurred during the performance of his work duties so as to

satisfy the third element. Rather, Branson contends the System and the district court should have considered a cumulative trauma theory as to the issue of his qualifying for accidental disability retirement benefits. He says that the phrase "at some definite time and place" in section 411.6(5)(a) should be construed broadly to include a cumulative, progressing injury rather than a single event and thus his progressing knee condition would qualify him for accidental disability retirement benefits under that statute.

### IV. Is plaintiff entitled to accidental disability retirement benefits?

■ The narrow question we must decide is whether a member of the retirement system, *see* Iowa Code sections 411.1(11), 411.3 (discussing definition of "member"), who sustains a cumulative, progressing injury, or aggravation of a condition, not caused by any specific accident or incident, is entitled to accidental disability retirement benefits under Iowa Code section 411.6(5). The answer to this question depends upon our interpretation of the phrase "an injury . . . incurred in or aggravated by the actual performance of duty at some definite time and place" as found in section 411.6(5)(a).

■ In considering the proper interpretation of section 411.6(5)(a), we keep in mind that laws creating pension rights are to be liberally construed to promote their legislative purpose and objective. *See Patton v. Municipal Fire & Police Retirement Sys.,* 587 N.W.2d 480, 482 (Iowa 1998) (citations omitted). However, we are not free to ignore the statutory language of chapter 411 in favor of what the statute "should" provide. *Id.* Our task is to look at what the legislature said, rather than what it should or might have said. *Id.; accord Stroup v. Reno,* 530 N.W.2d 441, 444 (Iowa 1995).

■ Upon our review, we believe that the language of section 411.6(5)(a) is clear and unambiguous and plainly requires that a member's incapacitating disability be attributed to a specific event or incident in order

---

1. The term "disease" is defined in chapter 411 as "heart disease or any disease of the lungs or respiratory tract and shall be presumed to have been contracted while on active duty as a result of strain or the inhalation of noxious fumes, poison or gases." Iowa Code § 411.6(5)(c).

to qualify for accidental disability retirement benefits. Specifically, the term "accident," in describing a type of disability retirement benefit, when read together with the phrase "at some definite time and place," suggests that the incapacitating disability is the result of, or can be traced to, a specific event. Because we believe the language of section 411.6(5)(a) is clear and unambiguous, we need not resort to rules of statutory construction to determine legislative intent. *See Drahaus v. State*, 584 N.W.2d 270, 274 (Iowa 1998) (when text of statute is plain and its meaning clear, court will not search for meaning beyond express terms of statute or resort to rules of statutory construction). Rather, we must simply enforce the language of section 411.6(5)(a) as written. *See id.*

We also point out that none of the cases relied upon by Branson assist us in this appeal. In those cases where accidental disability retirement benefits were awarded, a specific injury could either be pinpointed or was not required. *See, e.g., City of Cedar Rapids*, 572 N.W.2d at 925 (upholding System's award of accidental disability benefits to police officer for mental injury, without accompanying physical injury, based on specific stressful events that occurred during work as officer); *City of Cedar Rapids*, 526 N.W.2d at 290 (award by System of accidental disability benefits upheld where firefighter's specific 1984 back injury was substantial factor in precipitating degenerative disc disease); *Butler v. Pension Bd.*, 259 Iowa 1028, 147 N.W.2d 27, 30 (1966) (former police matron was diagnosed with heart disease, a service connected disability which is presumed under language of statute to arise from active duty, and thus it was unnecessary for claimant to pinpoint any particular event as the cause of her condition).

Additionally, the fact that we recognized the availability of workers' compensation benefits in cases involving a cumulative injury, *see McKeever Custom Cabinets v. Smith*, 379 N.W.2d 368, 374 (Iowa 1985), does not control the outcome of this case. Unlike the workers' compensation statute which simply requires that the injury arise out of and in the course of employment, *see* Iowa Code section 85.3(1), the legislature has decided

that in order to be eligible for the higher level of accidental disability retirement benefits, the injured person must show that the injury is attributable to a specific event at some definite time and place, not simply that the injury arose out of the course and scope of employment.

Simply stated, Iowa Code section 411.6(5)(a) requires a member to prove that his or her incapacitating injury is the result of a specific, work-related accident or incident to qualify for accidental disability retirement benefits. The record shows Branson does not meet this requirement and thus he is not entitled to receive accidental disability retirement benefits from the defendant System. *Cf. Chapman v. Sanders*, 528 S.W.2d 462, 464–65 (Mo.Ct.App.1975) (police officer who was involved in several automobile accidents during his career, none of which resulted in total and permanent incapacity, did not qualify for accidental disability retirement benefits; series of accidents or "traumatic events" did not constitute an "accident" under Missouri statute requiring that the member's disability result from an accident "occurring at some definite time and place").

We do not question the wisdom of legislation concerning the availability of greater benefits to a member who sustains a disabling injury which can be attributed to a specific time or event versus a member who develops a disabling injury over time. *See Utilicorp United Inc. v. Iowa Utilities Bd.*, 570 N.W.2d 451, 456 (Iowa 1997) (determining wisdom or effectiveness of legislation is not a judicial function). Moreover, the fact that Branson receives a lesser amount of disability retirement benefits than a member who sustains a disabling injury attributable to a specific event does not mean that the legislature does not value Branson's years of service. The legislature has simply made the requirements for accidental disability retirement benefits more stringent than those required for ordinary disability retirement benefits. Because those requirements are clear and unambiguous, our only task is to enforce them. *See Drahaus*, 584 N.W.2d at 274. We also note that if plaintiff's cumulative trauma theory were to succeed here to qualify him for an "accidental" disability retirement pen-

sion, there would be few situations left where the "ordinary" disability retirement pension would be appropriate.

In any event, we believe that the district court correctly articulated a possible basis for the "some definite time and place" requirement in section 411.6(5)(a) when it stated:

> Chapter 411 also allows recovery for cumulative work-related injuries, but it preserves the distinction between cumulative and "accidental" disabilities, and compensates the latter at a higher rate. The fact that courts often make analogy to the workers' compensation laws when interpreting the statutes governing the System does not operate to erase the accident requirement found in Iowa Code section 411.6(5)(a).

> . . . .

> . . . The most obvious rationale is that the legislature recognizes police officers and firefighters endure an extraordinary amount of stress upon the human body, which accumulates as they age. The "accident" requirement is an effort by the legislature to distinguish between those public servants whose careers are cut short due to an event beyond their control, and those whose careers end after many years of voluntarily accepted wear and tear. Such a motivation appears to be both rational and justified.[2]

## V. Disposition.

We agree with the district court and conclude that the System's decision, that Branson is not entitled to accidental disability retirement benefits under Iowa Code section 411.6(5)(a), is supported by substantial evidence and that the statute was applied cor-

rectly. We affirm the judgment of the district court.

**AFFIRMED.**

---

2. These statements were made in response to Branson's claim that the "definite time and place" requirement in section 411.6(5)(a) creates an unconstitutional distinction between members who can trace their incapacitating injury to a specific time and place and those who cannot. Branson has not raised this argument in his brief and thus we need not consider it on appeal. *See* Iowa R.App. P. 14(a)(3) (failure in brief to state an issue may be deemed waiver of that issue); *accord* Mueller v. St. Ansgar State Bank, 465 N.W.2d 659, 659 (Iowa 1991). We believe the district court's statements concerning the rational basis for the legislation are helpful in addressing Branson's claim that a cumulative trauma theory satisfies the "definite time and place" requirement in section 411.6(5)(a).